In the Matter of SHAFI BEZAR, Appellant, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Respondent. (And Another Related Proceeding.)

Third Department, October 12, 1989

### APPEARANCES OF COUNSEL

*Lifshutz & Polland (Joseph K. Gormley, James M. Spector* and *Joseph J. La Barbera* of counsel), for appellant.

*Robert Abrams, Attorney-General (Martin A. Hotvet* and *Peter G. Crary* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

Petitioners are both licensed practicing physicians in this State and have been continuously enrolled in the New York Medicaid program, as providers of medical services, for more than a decade. Effective January 5, 1987, respondent, State Department of Social Services (hereinafter DSS), the State agency administering Medicaid, promulgated new regulations concerning, *inter alia,* the procedures for enrollment and termination of enrollment of Medicaid providers (18 NYCRR part 504). Among the new provisions was the requirement that previous providers must submit an application for reenrollment upon 60 days' notice from DSS, failing which the provider's participation in the program would automatically terminate (18 NYCRR 504.10 [b]). DSS was to set up a reenrollment schedule for all Medicaid providers based upon provider type and/or geographic location (18 NYCRR 504.10 [c]).

After receiving notice from DSS, both petitioners duly submitted applications for reenrollment pursuant to the foregoing regulations. DSS then conducted visitations at their respective medical offices and sample audits of their medical records, the latter procedure being sanctioned by the regulations (18 NYCRR 504.3 [g]). Next, a peer review was had by a physician of sample records of 15 patients, in the case of petitioner Jaime A. Giraldo, and 10 such records, in the case of petitioner Shafi Bezar. At the conclusion of these procedures, petitioners were each notified in writing that his application for reenrollment was not accepted and that, accordingly, his participation in the Medicaid program would be terminated within 60 days, subject to the right to an administrative appeal. Attached to each notification was a detailed summary of the factors from the on-site visit and record review considered in denying reenrollment. As to Giraldo, 7 of the 10

factors set forth in the attachment related to incomplete records of specifically named patients such as, e.g., absent pediatric patient growth and development charts and immunization records, and the lack of record substantiation to justify certain treatments given and tests performed. The number of patients involved represented a high percentage of the patient records reviewed. Also, the written summary indicated Medicaid billing violations in that there was a substantial use of billing for comprehensive exams, without justification therefor in patient histories. In the case of Bezar, again the primary fault related to patient records in a majority of the patient histories reviewed, as either lacking documentary verification for treatments given or being totally illegible.

Both petitioners, through attorneys' letters, availed themselves of the right to appeal specified under the regulations (18 NYCRR 504.5 [e]). The regulatory appeals procedure provides only for the applicant's submission of written arguments or documentation "which would controvert the reason for the denial or disclose that the denial was based upon a mistake of fact" (18 NYCRR 504.5 [e] [2]).

Petitioners' appeal letters expressly reserved their objections to the adequacy of the review process, contending that a full evidentiary hearing, including the right to call witnesses and cross-examine adverse witnesses, was constitutionally required. Their appeals were reviewed by a DSS committee composed of three members of its Division of Administration who then submitted recommendations to the DSS Deputy Commissioner for Medical Assistance. The outcome of this review was adverse to petitioners, and they received notices of final determinations that "the best interests of the Medicaid Program will be served" by the affirmance of the initial denials of their applications (see, 18 NYCRR 504.4 [e] [2]). Petitioners then initiated the instant proceedings under CPLR article 78 to challenge the determinations, and now appeal from the dismissal of their petitions.

Each of the arguments advanced for reversal attacks the failure of DSS to accord petitioners an evidentiary hearing before terminating their participation as health care providers in the Medicaid program. First, they contend that, as a matter of proper construction of the applicable regulations, DSS should have forthrightly proceeded to terminate their enrollments as existing providers under 18 NYCRR 504.7 (b) for having "engaged in an unacceptable practice as set forth in

Part 515 of this Title", in which case they would have been "entitled to * * * an opportunity to be heard in accordance with Part 515 of this Title" (18 NYCRR 504.7 [b]). Termination, they argue, was the appropriate procedure because all of the significant deficiencies relied upon to deny reenrollment were in fact "unacceptable practices" as specifically defined in 18 NYCRR 515.2 (b), and DSS should not be permitted to circumvent the hearing requirements for termination on such grounds by resort to denial of reenrollment. We disagree. The procedures for enrollment and reenrollment of providers in the Medicaid program (18 NYCRR 504.4-504.6, 504.10), are treated separately and distinctly from those for termination or suspension of participation in Medicaid by a provider once duly accepted as an enrolled provider, during a specified period of enrollment (see, 18 NYCRR 504.7, 515.3). Since the available sanctions against a provider formally found guilty of engaging in an unacceptable practice may be significantly more severe and stigmatizing than the mere refusal to enroll or reenroll a Medicaid provider, DSS could rationally provide a more extensive administrative appeal for terminations based on unacceptable practices than where it simply refuses to enroll or reenroll a provider (see, Matter of G & S Pharmacy v Perales, 151 AD2d 668, lv denied 74 NY2d 612).

█ Next, petitioners argue that DSS, in demanding reenrollment of Medicaid providers while at the same time withholding a full administrative evidentiary hearing before denying their applications to reenroll, violated their contractual rights to continued participation in the Medicaid program. Petitioners, however, point to no provisions in the prior regulatory scheme, nor to any acts or statements directed to them specifically or to providers generally from which a contract, express or implied, can be found to continue their enrollments indefinitely (cf., Perry v Sindermann, 408 US 593). All petitioners allege is that, prior to the promulgation of the current regulations requiring reenrollment, Medicaid providers were not removed from participation in the program except through the formal termination procedures of 18 NYCRR part 515. The mere fact of the existence of a prior practice is an insufficient basis upon which to mandate that the hearing procedures for formal termination of Medicaid provider status be employed upon a denial of reenrollment (see, Connecticut Bd. of Pardons v Dumschat, 452 US 458, 465; see also, Matter

*of Daleview Nursing Home v Axelrod,* 62 NY2d 30, 33; *Matter of Kraushar v Burstein,* — AD2d —, — [decided herewith]).

█ Insofar as petitioners assert that an evidentiary hearing was constitutionally mandated under the Due Process Clause of the 14th Amendment before denial of their applications for reenrollment could be effected, their arguments are also unavailing. Due process only protects against deprivations of liberty or property interests *(Board of Regents v Roth,* 408 US 564, 569). But a claim to due process protection of a property interest in some State-conferred benefit is, in the first instance, dependent upon a demonstration of the creation of such a property interest under State law *(Bishop v Wood,* 426 US 341, 344; *Board of Regents v Roth, supra,* at 577). Put even more explicitly "[t]he hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except *'for cause' " (Logan v Zimmerman Brush Co.,* 455 US 422, 430 [emphasis supplied]).

We find no such guaranteed right to reenrollment as a provider in the Medicaid program, which cannot be removed *except for cause,* under the regulatory scheme here. First, the regulations expressly provide that, except in the more serious instance of an expulsion from the Medicaid program upon a finding that the provider engaged in an unacceptable practice, termination of participation in the program may be effected by either DSS or the provider, *without cause,* on 30 days' notice (18 NYCRR 504.7 [a]). Second, close analysis of the regulatory provisions regarding DSS acceptance or rejection of an application to enroll or reenroll reveals that the agency has a wide, virtually unlimited range of discretion, under guidelines permitting the sole reasons for rejection to be based on policy or subjective factors not susceptible to judicial review. Thus, the basic standard for denial of enrollment or reenrollment is that "it is in the best interest of the [Medicaid] assistance program to do so" (18 NYCRR 504.4 [e] [2]). In making its decision on an application, DSS is only obliged to "consider" various factors (18 NYCRR 504.5 [a]). Among such factors are "any other factor which may affect the effective and efficient administration of the program" (18 NYCRR 504.5 [a] [14]). Contrastingly, termination of an already enrolled provider for cause requires a specific finding by DSS that the provider has engaged in an unacceptable practice (18 NYCRR 504.7 [b]), a phrase defined in a fact-specific manner under the regulations (18 NYCRR 515.2 [b]). Thus, the only arguably valid property interest created under the regulations is to not

be formally terminated as a provider on the ground of having engaged in an unacceptable practice *(S & D Maintenance Co. v Goldin,* 844 F2d 962, 968).

It is true that some of the factors to be considered by DSS on an application for enrollment or reenrollment overlap the serious professional misconduct constituting one or more of the forms of unacceptable practices which trigger termination of provider status for cause. However, since the "discretion" of DSS to deny reenrollment "is not limited to instances of serious misconduct", the fact that unacceptable practices may also afford a ground for denial is insufficient to convert a mere expectancy of reenrollment into a constitutionally protected property interest *(Meachum v Fano,* 427 US 215, 228). These cases also closely parallel *Matter of Doe v Coughlin* (71 NY2d 48, 55, *cert denied* — US —, 109 S Ct 196), in which the Court of Appeals similarly held that the inclusion of highly subjective guidelines for determining eligibility for participation in a conjugal visit prison program defeats any contention that a legitimate liberty interest in participation in the program was created. In short, here, as in *Bishop v Wood* (426 US 341), the regulations created no right to reenrollment, but merely conditioned denial "on compliance with certain specified procedures" *(supra,* at 345). The State clearly has a legitimate interest in insuring that the medically indigent receive high quality medical care at reasonable cost through the review provided in the reenrollment process *(see, Matter of Camperlengo v Blum,* 56 NY2d 251, 255-256). That interest "is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational" *(Martinez v California,* 444 US 277, 282).

Alternatively, petitioners argue that they have a liberty interest in their professional reputations which was infringed by the denial of the applications to be enrolled as Medicaid providers, thereby engendering a due process right to a name-clearing hearing. However, the records in petitioners' proceedings fail to establish any public dissemination by DSS of stigmatizing reasons for the denials of their applications, a necessary element of the right to a hearing to clear one's reputation *(see, Matter of Lentlie v Egan,* 61 NY2d 874, 876; *see also, Bishop v Wood, supra,* at 348).

Even if we were to hold that petitioners had a constitutionally protected liberty or property interest in continued participation as providers in the Medicaid program, we would also

conclude that, in the circumstances of their cases, the review process provided for under the administrative appeals created by the regulation afforded them all the process that was due *(see, Morrissey v Brewer,* 408 US 471, 481). Petitioners received detailed notice of the deficiencies upon which denial of their applications was based. Before the initial denials, each application was subjected to peer review. The major grounds for denial were based on purely documentary evidence, consisting of petitioners' own medical records, and they were afforded a full opportunity to submit written documentation and arguments to controvert the initial findings, after which the denials of reenrollment were subjected to departmental committee review. In fact, however, the materials which petitioners submitted to controvert the initial findings largely consisted of nothing more than petitioners' own conclusory assertions that their records met accepted medical standards and were sufficient to justify the treatments and tests for which they sought and received payment under the Medicaid program. Under these circumstances, the holding of an evidentiary hearing would not seem to materially reduce the risk of an erroneous decision. The administrative burden in having to hold full adversarial hearings for providers denied reenrollment in the Medicaid program, where, as here, a policy had been adopted to review the eligibility of every Medicaid provider and supplier throughout the State, is self-evident. The United States Supreme Court has held that there "is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered" *(Federal Deposit Ins. Corp. v Mallen,* 486 US 230, —, 100 L Ed 2d 265, 282-283). Whether such a hearing might be required when a disappointed applicant has genuinely created sharply contested issues of fact, not resolvable by examination of documentary evidence, is not before us. Therefore, the administrative appeal provided under the regulations, plus judicial review under CPLR article 78, adequately met any requirements of due process in petitioners' cases *(see, Federal Deposit Ins. Corp. v Mallen, supra; Matter of Economico v Village of Pelham,* 50 NY2d 120, 128; *Matter of G & S Pharmacy v Perales, supra; Nole v Passidomo,* 118 AD2d 326, 330).

■ Finally, we also reject petitioners' remaining contention that their exclusion from the Medicaid program violates the "freedom of choice" provisions of the Federal Social Security Act *(see,* 42 USC § 1396a [a] [23]). That provision only entitles an individual to obtain services from any "qualified" provider

of medical services *(see, Bay Ridge Diagnostic Lab. v Dumpson,* 400 F Supp 1104, 1107-1108). A provider who is not found to be qualified under the applicable State regulations would not be governed by the Federal provision *(see, O'Bannon v Town Ct. Nursing Center,* 447 US 773, 785). Thus, there is no basis upon which to conclude that denial of petitioners' applications for reenrollment conflicts with Federal law.

KANE, J. P., MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Judgments affirmed, without costs.