OPINION OF THE COURT
 

 Simons, J.
 

 These are two unrelated CPLR article 78 proceedings in which petitioners sought to have their names expunged from the New York State Central Register of Child Abuse and Maltreatment. Respondents, officials of the State and local Social Services Departments, appeal orders of the Appellate Division which, in each proceeding, declared that the statutory standard of proof sufficient to substantiate reports of abuse entered in the Central Register violates the Due Process Clause of the Federal Constitution (US Const 14th Amend) and remitted the matters for new determinations. In
 
 Matter of Joel P.
 
 petitioners cross-appeal, contending that they are entitled to a new hearing.
 

 The orders should be affirmed and the matters remitted to the Department of Social Services for new determinations based upon the existing record.
 

 New York, like the vast majority of other States in the Nation, maintains a Central Register listing reported incidents of child abuse received in writing or over a 24-hour telephone hotline. The Register serves three broad purposes: (1) to aid social workers in their duties of investigating, treating and preventing child abuse, (2) to compile information and statistics about the extent and nature of child abuse in the State and (3) to inform employers, licensing agencies and foster and adoptive parent agencies about child abusers for the purpose of regulating their future employment or licensure.
 

 
 *703
 
 In an effort to reconcile the conflicting interests of the State in maintaining the Register and the interests of reported individuals who are the subject of erroneous inclusion in the Register, the Legislature has enacted an elaborate statutory-scheme establishing a procedure for the receipt of reports of suspected child abuse, investigation of the reports, an opportunity for the subject of the report to seek expunction and, finally, judicial review in an article 78 proceeding of an administrative decision denying expunction. Whether the report is substantiated, and therefore retained in the Register, or not rests upon a finding that the report is supported by "some credible evidence." It is this standard of proof which petitioners have successfully challenged in the courts below.
 

 We conclude that the statutory scheme regulating the Central Register violates constitutional standards and we therefore affirm both orders. A report of abuse must be substantiated by a fair preponderance of the evidence before information regarding the subject may be disseminated to employers in certain child care agencies or provider agencies in which the subject would have regular and substantial contact with children cared for by the agency, licensing agencies or foster and adoptive care agencies (hereinafter providers and licensing agencies)
 
 (see,
 
 Social Services Law § 424-a). Our result is consistent with the interpretation of the Federal Constitution made by the United States Court of Appeals for the Second Circuit
 
 (see, Valmonte v Bane,
 
 18 F3d 992)
 
 *
 
 and with decisions by the two other departments of the Appellate Division who also have found the statute wanting
 
 (see, Matter of Smith v Perales,
 
 208 AD2d 752 [2d Dept],
 
 appeal dismissed
 
 86 NY2d 837;
 
 Matter of Janice A. M. P. v Bane,
 
 216 AD2d 937 [4th Dept]).
 

 I
 

 The statutes involved are found in article 6, title 6 of the New York Social Services Law. They govern the reporting, investigation and recording of reports of suspected abuse or maltreatment of children and the administrative process by which "indicated", i.e., substantiated, reports may be reviewed and a determination made whether they should be maintained in the Central Register or expunged.
 

 
 *704
 
 The Central Register is one part of a larger system designed to protect the safety of children in New York State and its procedures are triggered by receipt of a report of suspected abuse or maltreatment. The reports may be mandated (physicians, school authorities, etc.) or permissive (see, Social Services Law §§ 413, 414). If the allegations contained in the report "could reasonably constitute a report of child abuse or maltreatment”, or "if true would constitute child abuse or maltreatment”, the report must be transmitted to the appropriate local child protective agency for investigation (Social Services Law § 422 [2] [a], [b]). The local agency then determines whether the report is "indicated” or "unfounded” (Social Services Law § 424 [7]). Indicated reports are maintained in the Central Register. Unfounded reports are deleted and all records and reports are destroyed (Social Services Law § 422 [5], [8] [a] [iii]; [c] [i]). A report is indicated if there is "some credible evidence” that the subject committed the act and the act constitutes abuse or maltreatment (Social Services Law § 412 [12]). When a report is indicated, the subject is notified and may request that the report be expunged (Social Services Law § 422
 
 [8J).
 

 If a subject requests expunction, the State Department of Social Services conducts a review of the report. It first determines whether there is some credible evidence that the subject committed the act and that the act constitutes abuse or maltreatment (Social Services Law § 422 [8] [a] [ii]). If there is no such evidence, the report is expunged. However, if the Department finds some credible evidence of abuse, it must then decide whether the act could be relevant and reasonably related to: (a) employment with certain child care agencies as defined in Social Services Law § 424-a (3); (b) the subject having regular and substantial contact with children cared for by a provider agency; or (c) approval of an application to a licensing, adoption or foster care agency as defined in Social Services Law § 424-a (4) (Social Services Law § 422 [8] [a] [ii]). If the Department concludes that the act is not or could not be relevant and reasonably related to those matters, the report is not expunged, but it is not disclosed to provider or licensing agencies upon an inquiry to the Central Register about the subject of the report (Social Services Law § 422 [8] [a] [iv]).
 

 If the expunction request is denied, an administrative hearing is scheduled (Social Services Law § 422 [8] [a] [v]; [b] [i]). At the hearing, the investigating agency must prove by some credible evidence that the subject committed the act or acts of
 
 *705
 
 abuse or maltreatment indicated in the report (Social Services Law § 422 [8] [b] [ii]). If the investigating agency satisfies that burden, the report is not expunged and the hearing officer must then make findings on relevancy similar to the analysis of relevancy performed by the Commissioner
 
 (see,
 
 Social Services Law § 422 [8] [c] [ii]; § 424-a).
 

 Finally, if the report is not expunged after the hearing, the subject of the report may commence a proceeding pursuant to CPLR article 78 to challenge the decision.
 

 The information in the Central Register is confidential and unlawful disclosure constitutes a misdemeanor (Social Services Law § 422 [4], [12]). However, Central Register reports are available to a number of law enforcement and child care agencies
 
 (see,
 
 Social Services Law § 422 [4] [A]) and must be disclosed under certain circumstances (Social Services Law § 424-a). For example, if a person applies for a certificate or license to be a foster parent or applies to adopt a child, the agency must inquire of the Central Register whether there is an indicated report on the applicant (Social Services Law § 424-a [1]). Similarly, an employer must inquire of the Central Register whether there is an indicated report on an applicant who seeks employment in a job that would involve "regular and substantial contact with children” (Social Services Law § 424-a [1] [b] [i]). Under the terms of the statute, if, after inquiry, the subject of the indicated report is denied a license or employment due to the existence of the report, the subject is entitled to a post-deprivation hearing at which the investigating agency must prove by a "fair preponderance of the evidence” that the abuse or maltreatment occurred (Social Services Law § 424-a [2] [d]\ The failure to sustain this burden does not result in expungement of an indicated report, however, but is noted on the report and precludes disclosure to provider and licensing agencies (Social Services Law § 424-a [2] [d]). If the investigating agency does sustain this burden, the subject’s name stays on the Central Register and is subject to disclosure upon inquiry. If the provider or licensing agency should hire or license the applicant, notwithstanding an indicated report of child abuse, it must specify the reasons for doing so in writing (Social Services Law § 424-a [2] [a]).
 

 Unless expunged earlier pursuant to these procedures, an indicated report must be expunged from the Central Register 10 years after the youngest child referred to in the report turns 18 (Social Services Law § 422 [6]).
 

 
 *706
 
 II
 

 These statutory provisions were applied in the two appeals before us.
 

 Matter of Lee TT. v
 
 Dowling: on July 30, 1991, petitioner Lee TT. was the subject of a telephone hotline report to the Central Register. The report alleged that petitioner, a child psychologist, had sexually abused his 16-year-old stepdaughter. The Central Register transmitted the report to the local County Department of Social Services, and notified petitioner that the report was under investigation to determine whether it was unfounded or should be marked indicated and kept on file.
 

 Following an investigation, the County Department marked the report indicated, concluding that some credible evidence existed to support the allegation of abuse. Petitioner requested the State Commissioner to expunge the record, but following an expunction conference, the request was denied. Thereafter, the petitioner sought a fair hearing. At the conclusion of the hearing, at which petitioner and his stepdaughter both testified, the Administrative Law Judge (ALJ) denied expunction, stating that there was some credible evidence supporting the allegations of sexual abuse or maltreatment and, further, that such acts were relevant and reasonably related to petitioner’s employment by a child care agency. The State Commissioner adopted the recommendation of the ALJ.
 

 Petitioner then instituted an article 78 proceeding asserting that the Commissioner’s determination violated due process guarantees of the Federal Constitution (US Const 14th Amend). Upon transfer to the Third Department, the Appellate Division annulled the determination and remitted the matter to the State Commissioner for a new determination. The Court held that the statutory standard of proof did not aiford adequate due process protection, and that the higher "fair preponderance of the evidence” standard was required at the administrative fair hearing stage conducted pursuant to Social Services Law § 422 (8) (b). This appeal followed.
 

 Matter of Joel P. and Aracelis P. v
 
 Bane: petitioners were the foster parents of three children, Jennifer S., born January 3, 1983, Michelle D., born November 7, 1984, and George "Joey” S., born September 18, 1986. On November 8, 1990, a psychologist at the school attended by Michelle D. filed a report of suspected child abuse or maltreatment with the Central Register based on a report of sexual acting-out behavior exhibited by Michelle. During its investigation of the report,
 
 *707
 
 the Deputy Director of the New York City Office of Confidential Investigations (OCI) instructed the Director of Louise Wise Services for Children to remove Michelle and Jennifer from petitioner’s care. George "Joey” S. remained in petitioner’s home pending the completion of the OCI report.
 

 A month later, another report concerning the petitioners was filed with the Central Register. The Mount Sinai Hospital reported that Jennifer had made statements during a psychiatric examination that her foster father had touched her sexually. OCI investigated and determined that the reports on Michelle and Jennifer should be marked "indicated”. George "Joey” S. was subsequently removed from petitioner’s home.
 

 Petitioners requested that the records be expunged from the Central Register, but their request was denied. At the administrative fair hearing which followed, the Administrative Law Judge concluded that "some credible evidence” of sexual abuse and inadequate guardianship existed, and it was reasonably related to petitioners’ fitness to be employed in child care or to become foster or adoptive parents. The motion for expunction was denied.
 

 Petitioners instituted this article 78 proceeding seeking to review that determination. Supreme Court transferred the proceeding to the Appellate Division, First Department, which unanimously granted the petition, annulled the determination of the State Commissioner and remanded the matter to the Department of Social Services for a new determination on the original record using a fair preponderance of the evidence standard of proof.
 

 ra
 

 Analysis begins by determining if the State has impaired any constitutionally protected right of petitioners and, if so, what process is due them.
 

 A
 

 The Due Process Clause of the Fourteenth Amendment to the United States Constitution and the similar provision contained in our State Constitution prohibit the government from depriving a person of "life, liberty or property without due process of law” (US Const 14th Amend; NY Const, art I, § 6). "Whether the constitutional guarantee applies depends on whether the government’s actions impair a protected liberty or property interest. In these proceedings, petitioners contend
 
 *708
 
 that the State’s action impairs a protected liberty interest in reputation and their concomitant ability to secure employment in their chosen fields.
 

 There is no constitutional prohibition against the State maintaining a list of suspected abusers. It may receive, index and investigate reports of maltreatment of children to assist it in discharging its responsibilities to protect and care for the subjects of the abuse or to enforce the penal laws. The Central Register provides important aids in meeting those tasks. Damaging though the information it contains may be to the subject’s reputation if revealed publicly, keeping it is a legitimate exercise of the State’s police powers and does not implicate constitutional concerns
 
 (see, Whalen v Roe,
 
 429 US 589, 598;
 
 Paul v Davis,
 
 424 US 693;
 
 see generally,
 
 Moore,
 
 Charting a Course Between Scylla and Charybdis: Child Abuse Registries and Procedural Due Process,
 
 73 NC L Rev 2063; Phillips,
 
 The Constitutionality of Employer-Accessible Child Abuse Registries: Due Process Implications of Governmental Occupational Blacklisting,
 
 92 Mich L Rev 139, 150-163).
 

 Moreover, such information may be disseminated to others under some circumstances: government agencies commonly share information for law enforcement and investigative purposes. The consequent damage to a subject’s good name resulting from inaccuracies is not a matter of constitutional magnitude but must be addressed by the tort laws regulating defamation. Indeed, the Supreme Court has held that the police can publish the fact that an individual has been arrested, even though the charges were subsequently dismissed, without violating the subject’s constitutional rights
 
 (see, Paul v Davis, supra).
 
 The stigma which results from the publication of such defamatory material is not constitutionally protected. A loss of liberty results only if some more "tangible” interest is affected or a legal right is altered
 
 (Paul v Davis, supra,
 
 at 701, 708-709;
 
 cf., Siegert v Gilley,
 
 500 US 226). In the commonly accepted phrase, there must be "stigma plus”
 
 (see, Colaizzi v Walker,
 
 542 F2d 969, 973;
 
 see also, Valmonte v Bane,
 
 18 F3d 992, 1000,
 
 supra; Neu v Corcoran,
 
 869 F2d 662, 667;
 
 cf., Smith v Organization of Foster Families,
 
 431 US 816 [no constitutionally protected
 
 privacy
 
 interest in foster family relationship]). The additional injury may be found in the loss of employment or the foreclosure of future employment opportunities
 
 (Paul v Davis, supra,
 
 at 701;
 
 Valmonte v Bane,
 
 18 F3d 992, supra;
 
 Doe v United States Dept. of Justice,
 
 753 F2d 1092, 1106-1107).
 

 Most certainly there was stigma here. Branding petitioners child abusers called into question their " 'good name, reputa
 
 *709
 
 tian, honor, or integrity’ ”
 
 (Board of Regents v Roth,
 
 408 US 564, 573). The question is whether the State’s action resulted in the additional damage sufficient to constitute a constitutional deprivation as defined by the holding in
 
 Paul v Davis (supra).
 

 Petitioner Lee TT. was employed as a psychologist in the Child Care Center at a State Psychiatric Center. Following his listing he was transferred out of his unit. It is not clear that his transfer resulted from the report to the Central Register, but it is clear that petitioner’s listing has severely jeopardized future employment prospects in his chosen field. Not only is the information that he is the subject of an indicated report available to all child care providers, future employers must consult the list before hiring petitioner and if they choose to hire him they are required by law to state in writing their specific reasons for doing so (Social Services Law § 424-a [2] [a]).
 

 The liberty interests of Joel P. and Aracelis P. are similarly injured. Foster parents are licensed by the State or an authorized foster care agency (Social Services Law §§ 376, 377). They provide care under a contractual agreement and are compensated for their services (18 NYCRR 427.2, 427.6). As a consequence of their listing in the Central Register, the foster children petitioners had cared for were removed from their home. The benefits available to them as foster parents, including the recognized right to be compensated for supplying foster care have been foreclosed (Social Services Law § 398). Moreover, the statutory preference they enjoyed to adopt George "Joey” S. has been lost
 
 (see,
 
 Social Services Law § 383 [3]) and their efforts to adopt him have been terminated. Manifestly, they will not be employed as foster parents or regarded as suitable adoptive parents in the future. Any agency which attempted to do so would be required by statute to justify its action in writing before hiring them (Social Services Law § 424-a [2] [a]).
 

 In sum, the inclusion of petitioners in the Central Register not only harmed their personal reputations, it affected their present employment and effectively foreclosed them from any future employment in the child care area. It signified not that petitioners had performed poorly in their prior jobs or suffered from personal inadequacies but that they presented a potential danger to children or, worse, that they might be capable of criminal conduct toward them. If a future provider or licensing agency did not accept that as so, it had to specify in writing why it believed the subject should be employed or licensed, the information in the Central Register notwithstanding.
 

 
 *710
 
 B
 

 Having determined that petitioners have a protected interest, we turn next to a consideration of whether the procedures the statute provides protect individuals from an improper deprivation of that interest. That inquiry involves a consideration of three factors: (1) the private interest affected by the State’s action, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional safeguards and (3) a consideration of the government’s interest
 
 (Mathews v Eldridge,
 
 424 US 319).
 

 The potential loss of employment as either a child psychologist or a foster parent, or of the right to pursue adoption of a child are substantial interests. The government’s characterization of petitioners as child abusers affects not only their present employment in the child care field or as foster parents; it effectively bars them from obtaining similar employment or benefits in the future. Moreover, the characterizations of Joel and Aracelis as child abusers has cost them the care of a child they were in the process of adopting and, realistically, it has foreclosed any possibility of future adoption. Thus, for these petitioners the State’s action has compromised some of life’s most important interests, earning a livelihood in one’s chosen field and establishing a family. Indeed, the stigma of being branded a child abuser may extend well beyond employment in the child care field to prevent employment in any field.
 

 The State has at least two identifiable interests in maintaining the Central Register. First, it has a
 
 parens patriae
 
 interest. It is an unfortunate reality of modern life that children are often victimized and that the State has a strong interest in preserving and promoting their health and welfare and protecting them from abuse
 
 (see, Santosky v Kramer,
 
 455 US 745, 766). Indeed, the laws against child abuse and child neglect are an implicit recognition that even the. rights of parents are not absolute and that society through its courts and social service agencies should intervene to protect endangered children.
 

 Minimal procedural safeguards facilitate the State’s efforts to limit children’s exposure to abuse because they allow the State to respond quickly to isolate children from potentially dangerous contact with adults on the first indication of possible maltreatment and forewarn providers and licensing agencies of possible future harm. Enhancing procedural protections to protect private interests necessarily impedes these efforts by the State, though it may serve the State’s interest in other ways by reducing the number of false negative findings.
 

 
 *711
 
 Second, the State has a clear interest in controlling the expense involved in maintaining the Central Register
 
 (see, Santosky v Kramer, supra).
 
 Stricter procedures may increase costs in investigating and defending the maintenance of the Register. Though such increases properly may be weighed against the potential benefits to protected private interests
 
 (see, Mathews v Eldridge, supra,
 
 at 347-348), the State has not submitted evidence that a change of procedure would increase costs or how much the increase might be and thus, it is not a consideration in the matters before us.
 

 Manifestly, both the State and private interests involved in these matters are weighty and compelling. The balance must be struck by assessing the risk of error.
 

 Complaints of suspected child abuse are required not only from doctors, teachers and others similarly employed, but may be received from anyone, whether under a duty to report or not and whether identified or anonymous. The statute provides that those reports may be indicated if they are supported by "some credible evidence.” The standard is defined in the Department’s manual as "evidence worthy of being believed” (Dept of Social Servs Child Protective Servs Manual, Appendix B, at 7 [Aug. 1989]). One commentator has observed that this standard safeguards only against bad faith or entirely unfounded reports of child abuse: it provides no assurance that reports sounding reasonable are, nevertheless, erroneous because the same evidence motivating the report will provide the basis for confirming it (Phillips,
 
 The Constitutionality of Employer-Accessible Child Abuse Registries: Due Process Implications of Governmental Occupational Blacklisting,
 
 92 Mich L Rev 139, 188-189). Petitioners characterize the "some credible evidence” standard as requiring little more than rumor to substantiate a report.
 

 However the standard is viewed, it assuredly permits a "bare minimum” of evidence to support the allegations against the subject
 
 (Valmonte v Bane, supra,
 
 at 1004). It imposes no duty on the fact finder to weigh conflicting evidence, no matter how substantial, and allows a report to be indicated if only one out of several believable items of evidence supports it.
 

 The dangers of such a minimal standard of proof are evident. Abuse frequently involves private conduct and is based upon the reports of minors or actions of a minor observed and interpreted by others. There may be no supporting eyewitness testimony or objective evidence to support the report and
 
 *712
 
 therefore the evaluation of it may involve, to a large degree, subjective determinations of credibility. Under the present standard a fact finder in such cases may be tempted to rely on an intuitive determination, ignoring any contrary evidence. The risk of error is placed entirely on the subject of the report for there is no requirement that the fact finder must consider, let alone evaluate, evidence favorable to the subject.
 

 Not surprisingly this process results in a disturbingly high number of false positive findings of abuse. In
 
 Valmonte v Bane (supra),
 
 plaintiffs asserted, without contradiction by. the State, that 75% of the challenged reports of abuse were successfully expunged
 
 (id.,
 
 at 1003-1004). While the State now questions that figure, the margin of error is unquestionably significant and results in substantial injury to constitutionally protected private interests
 
 (see generally,
 
 Besharov,
 
 "Doing Something” about Child Abuse: The Need to Narrow the Grounds for State Intervention,
 
 8 Harv J Law & Pub Policy 539). The most practical method of safeguarding subjects reported to the Central Register is to require a higher standard of proof before reports are substantiated. The degree of proof appropriate to the circumstances is the kind of question that has been traditionally resolved by the courts
 
 (Santosky v Kramer,
 
 455 US 745, 755-756,
 
 supra,).
 
 It should reflect not only the weight of the public and private interests affected, but also a judgment about how the risks of error should be distributed
 
 (id.).
 

 We conclude that the Due Process Clause of the Federal Constitution requires the Department to substantiate reports of child abuse by a fair preponderance of the evidence before they may be disseminated to providers and licensing agencies as a screening device for future employment. During the investigative process the information may be retained on the strength of some credible evidence supporting it and released to those health care and law enforcement agencies under the terms and conditions listed in section 422 (4) (A). No report shall be released to providers or licensing agencies, however, until a fact finder determines after a hearing that the report is substantiated by a fair preponderance of the evidence or the subject’s time to move for expunction has expired.
 

 IV
 

 The Department maintains that the risk of error is sufficiently minimized by the statute’s provision for a postdeprivation hearing at which the sufficiency of the abuse must be established by a fair preponderance of the evidence (Social Services Law § 424-a [2] [a], [d]).
 

 
 *713
 
 Due process requires that a person whose constitutional rights are affected by government action is entitled to be heard and it makes obvious sense in most cases "to minimize substantially unfair or mistaken deprivations” by insisting that the hearing be granted at a time when the deprivation can still be prevented
 
 (see, Fuentes v Shevin,
 
 407 US 67, 79-82). That is particularly so in cases involving reputational injuries. The deprivation of a constitutionally protected property interest may be remedied
 
 post hoc
 
 by monetary damages but the injury inflicted on one’s reputation cannot be so easily overcome. The damage to the subject following publication of an unsubstantiated report of child abuse may be irreversible. Moreover, even where the facts that abuse occurred are clear, the appropriateness of disclosing that finding may not be
 
 (see, Cleveland Bd. of Educ. v Loudermill,
 
 470 US 532, 543). Indeed, the statute provides that substantiated reports may not be disclosed unless relevant and reasonably related to employment
 
 (see,
 
 Social Services Law § 422 [8] [a] [ii]; § 424-a).
 

 In the absence of any evidence from the State that a predeprivation hearing will involve excessive costs or be unduly burdensome when compared to a postdeprivation hearing, subjects are entitled to a predeprivation hearing to determine by a fair preponderance of the evidence whether reports of abuse can be substantiated and relevant to future employment or licensure.
 

 V
 

 Petitioners Joel P. and Aracelis P. contend that the Due Process Clause of the State Constitution also requires a higher standard of proof at the hearing stage (NY Const, art I, § 6). Their claim rests on recognized principles of federalism which hold that State courts are bound by Supreme Court decisions defining Federal constitutional rights but that those rulings establish a minimum standard which State courts may surpass when interpreting their State Constitution so long as their decisions do not conflict with Federal law
 
 (see generally, Matter of Town of lslip v Caviglia,
 
 73 NY2d 544, 556;
 
 People v P. J. Video,
 
 68 NY2d 296, 301-302;
 
 cf., Sharrock v Dell Buick-Cadillac,
 
 45 NY2d 152). Inasmuch as we conclude that the relief petitioners requested is warranted under Federal constitutional principles, we have no occasion to consider whether the Due Process Clause of the State Constitution guarantees even broader protections.
 

 Accordingly, in
 
 Matter of Lee TT. v Dowling
 
 the order of the Appellate Division should be affirmed, with costs, and in
 
 Mat
 
 
 *714
 

 ter of Joel P. v Bane
 
 the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In
 
 Matter of Lee TT. v Dowling:
 
 Order affirmed, with costs.
 

 In
 
 Matter of Joel P. v Bane:
 
 Order affirmed, without costs.
 

 *
 

 Respondents maintain that they have, since the
 
 Valmonte
 
 decision, formulated new rules which implement a system adequately protecting the interests of subjects. Those rules were not applied in the matters before us and we have no occasion to consider them or pass on their validity.