■ In the Matter of AMERICAN PHARMACEUTICAL SERVICES, INC., Appellant, v BRIAN WING, as Commissioner of Social Services of the State of New York, et al., Respondents. [687 NYS2d 211] —Mercure, J. P. Appeal from a judgment of the Supreme Court (Torraca, J.), entered December 30, 1997 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents denying petitioner's application for enrollment as an approved Medicaid provider.

Petitioner is in the business of supplying medical supplies, including durable medical equipment such as wheelchairs and walkers, to nursing homes and nursing home residents. In April 1996, petitioner applied to the Department of Social Services (hereinafter DSS) for enrollment as a Medicaid provider. On two essentially identical applications (one for each of petitioner's service locations), petitioner responded to the question labeled "J", which reads, "How do you ascertain the medical necessity for the items ordered?", in the following manner: "APS Field Service Representatives (FSRs) review medical records in each nursing home on a monthly basis. FSRs gather documentation from charted medical records re diagnosis, medical conditions, product ordered, product usage, and any other documentation. Certificates of Medical Necessity or Doctor's Orders are generated and sent to the attending physician for authorization and signature." By notice dated August 9, 1996, DSS denied the application upon the ground that petitioner's practice of having its representatives review patients' medical records in order to generate orders and review the needs of patients was viewed as an inducement for solicitation of business and as violating legal requirements that nursing homes maintain the confidentiality of patient records.

Petitioner thereafter sought reconsideration of the denial pursuant to 18 NYCRR 504.5 by submitting a letter from its attorneys stating that petitioner's Field Service Representatives do not review nursing home patient medical records for the purpose of generating orders but, rather, review the records only where the nursing facility or its physicians have already ordered an item for which a claim must be submitted and only where the record is presented as the verification of the actual medical necessity for the claims filed. Following

review of petitioner's submission, the Department of Health* upheld the denial, stating that the reconsideration process had disclosed neither mistakes of fact nor contradiction of the findings in the initial denial. This CPLR article 78 proceeding in the nature of mandamus to review ensued. Supreme Court dismissed the petition, and petitioner now appeals.

We affirm. In view of the fact that DSS has a " 'virtually unlimited range of discretion' * * * on the question of whether it is in the best interest of the medical assistance program to deny petitioner's application" (*Matter of Roggemann v Bane*, 223 AD2d 854, 857, quoting *Matter of Bezar v New York State Dept. of Social Servs.*, 151 AD2d 44, 49; *see, Matter of Melone v New York State Dept. of Social Servs.*, 233 AD2d 548, 549; 18 NYCRR 504.4 [e] [2]), we are not at all persuaded that the determination to deny petitioner's application is in any way irrational. To the contrary, a common-sense construction of petitioner's response to question J rationally leads to the conclusion that petitioner's Field Service Representatives make monthly visits to nursing homes and review patient records for the purpose of discovering patients who qualify for its products. Then, for each patient found to so qualify, they generate a proposed Certificate of Medical Necessity or doctor's order and, thus, a likely sale for petitioner. Such conduct on petitioner's part would be antithetical to the proper utilization of public funds (*see*, 18 NYCRR 504.1 [a]) and would constitute impermissible solicitation of business and an improper invasion of patients' privacy.

In fact, petitioner does not argue otherwise. Rather, petitioner contends that the only rational construction of its response to question J presumes that the stated activities of its Field Service Representatives take place only after the product had already been ordered. We disagree. Despite petitioner's characterization of its representatives' conduct as *verifying* the medical necessity of items *already* ordered, question J seeks to know the means of *ascertaining* the medical necessity for items ordered, which would logically take place in advance. We also note that, in its request for reconsideration, petitioner stated its intention to "supplement or correct information which is no longer accurate" and acknowledged that "its brief response to question 'J' could be misunderstood".

Nor are we persuaded that respondents violated the requirement of 18 NYCRR 504.5 (b) that its notice of denial state "the

---

* During the pendency of petitioner's application, responsibility for oversight of the Medicaid program in New York was shifted from DSS to the Department of Health (*see*, L 1996, ch 474).

reason or the reasons for the denial". As previously stated, the notice issued by respondents made it clear that the applications were denied because petitioner's stated practice was viewed as an inducement for solicitation of business and as violating the provisions of New York law requiring nursing homes to maintain the confidentiality of patient records. Contrary to the contention in petitioner's brief, neither the explanations for respondents' determination that were stated in affidavits submitted in connection with the present CPLR article 78 proceeding nor the content of a letter from the Commissioner of Health to a nonparty "conjured up a different reason for [respondents'] denial".

We also reject the contention that petitioner was denied meaningful reconsideration. The burden was on petitioner to accompany its request for reconsideration with all information that it wished to be considered (18 NYCRR 504.5 [e] [2]), and it was entirely reasonable for respondents to give more weight to the original application, which was signed and sworn to by petitioner's president, than to the subsequent (and contradictory) unsworn hearsay statement of petitioner's attorneys.

Petitioner's remaining contentions have been considered and found to be lacking in merit.

Crew III, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.