**[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 11.]**

APEL ET AL., APPELLANTS, *v.* KATZ ET AL., APPELLEES.

[Cite as *Apel v. Katz*, 1998-Ohio-420.]

*Real property—Interpretation of scope of the reservation of the right to keep and maintain a roadway easement.*

(No. 97-641—Submitted March 24, 1998—Decided August 19, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 68294.

_____

{¶ 1} This appeal revolves around a dispute over the scope of an easement on a parcel of land, and the often acrimonious relationship of the owners of the two properties directly affected by that easement. Plaintiffs-appellants, Zeev and Atara Apel, are the holders of the dominant tenement benefited by the easement. Defendants-appellees, Shai and Linda Katz, are the holders of the servient tenement subject to the easement.

{¶ 2} The parcels now owned by appellants and by appellees at one time constituted one larger parcel, owned by Laura L. Goodman. In 1976, Goodman, while retaining the rear, larger (south) parcel (now owned by appellants) for her own use, sold the front (north) parcel (now owned by appellees) to Angela M. Saporito and Marie C. Saporito. The front parcel abuts on Pike Drive in the village of Orange, in Cuyahoga County. The rear parcel does not abut any public access street. The deed transferring the front parcel to the Saporitos contains the following provisions:

"Grantor [Goodman] reserves for herself, her heirs and assigns, an easement to provide ingress and egress to and from the property owned by the Grantor abutting the above-described premises on the South. Grantor shall be allowed to keep and maintain a roadway;

"Further, Grantor reserves for herself, her heirs and assigns, the right to install upon the easement public utility lines and poles, or underground utilities, and sewer and water lines below ground."

**{¶ 3}** The deed described the easement area as a thirty-foot-wide strip of land along the length of one side of the front property.

**{¶ 4}** Goodman conveyed the rear, larger parcel to appellants in 1979. In the deed conveying the rear parcel, the following language appears:

"TOGETHER WITH an easement as described in Deed from Laura L. Goodman to Angela M. Saporito and Marie C. Saporito  * * *, which easement provides ingress and egress to and from the above described property to Pike Drive, the right to keep and maintain a roadway, to install upon the easement Public utility lines and poles or underground utilities and sewer and water lines below ground."

**{¶ 5}** In a deed recorded on December 12, 1988, the succeeding owner of the front parcel, Rose Marie Lentini, f.k.a. Rose Marie Saporito, transferred her interest in the parcel to appellees. This deed contained the following provision:

"And the Grantors [*sic,* grantor, Lentini]  * * * hereby covenant with the said Grantees [appellees]  * * * that the said Grantors [*sic*] are the true and lawful owners of said premises and are well seized of same in fee simple[,] have good right and full power to bargain[,] sell and convey the same in the manner aforesaid and that the same are free and clear of all encumbrances, EXCEPT  * * * conditions and restrictions of record and any conditions, reservations or easements created therewith * * *."

**{¶ 6}** After appellees purchased the front parcel, they began to construct a house on the land. A disagreement arose between appellants and appellees over the scope of the easement over the property. One of the points of contention concerned a rough gravel road or pathway over the front parcel used by the appellants, and previously used by Goodman, to access the rear parcel. The disagreement eventually escalated into animosity.

**{¶ 7}** On August 9, 1989, appellants filed a complaint in the Court of Common Pleas of Cuyahoga County, seeking a declaration of rights under the easement, damages, and an injunction. Appellants alleged that appellees had interfered with their use of the easement. In their answer, appellees disagreed with appellants' position on the scope of the easement. Appellees counterclaimed for compensatory damages, punitive damages, and attorney fees, alleging, *inter alia*, that appellants had exceeded the scope of the easement and had trespassed on their property.

**{¶ 8}** On October 10, 1990, appellees filed a motion for partial summary judgment. Appellees did not dispute the existence of appellants' easements for ingress and egress and for utilities, but did dispute that appellants possessed the right to keep and maintain a roadway on the front parcel. Appellees argued that, by failing to include the phrase "heirs and assigns" or other terms of inheritance and succession in the "roadway" portion of the easement reservation, Goodman merely made a reservation of roadway rights personal to herself, which could not be passed on to future purchasers of the rear parcel. The original reservation of the right to keep and maintain a roadway is hereinafter referred to as the "roadway provision," and the issue of whether the reservation benefits subsequent owners is the "roadway issue."

**{¶ 9}** Appellants responded in opposition to appellees' motion, and requested summary judgment in their favor, asserting that Goodman's reservation of roadway rights was a clarification of the scope of the easement for ingress and egress, and was not meant to be taken as a limitation of the rights retained by Goodman. Appellants also requested that the trial court order appellees to return the strip over which they had the easement to its previous condition, based on their allegations that appellees had improperly altered it. Furthermore, appellants moved for summary judgment on appellees' counterclaims, contending that there was no trespass and that appellees had suffered no damages.

**{¶ 10}** Appellees, in their reply brief, asserted that they had not obstructed or blocked the easement. They attached an affidavit of a surveyor, stating that much of the gravel pathway used by appellants to reach the property in the rear was not on the thirty-foot-wide easement, to support their trespass claim.

**{¶ 11}** On June 11, 1991, the trial court, without opinion, issued the following journal entry unaccompanied by a declaration of the rights of the parties:

"Motion of Defendants, Shai Katz, et al., for Partial Summary Judgment is GRANTED.

"Motion of Plaintiffs, Zeev Apel, et al., for Summary Judgment is DENIED as there are genuine issues of fact regarding interference with the easement."

**{¶ 12}** The case progressed toward a trial on appellees' counterclaims. Following some apparent misunderstandings regarding the assignment of a visiting judge and the setting of a trial date, an *ex parte* trial was held on appellees' counterclaims on December 9, 1991, with counsel for appellants not present. The trial court awarded appellees $12,530 in compensatory damages and $50,000 in punitive damages, plus costs, on their counterclaims. On appeal, the court of appeals reversed the damages awards and remanded for a new trial, holding that the *ex parte* trial had deprived appellants of their due process rights. *Apel v. Katz* (Apr. 29, 1993), Cuyahoga App. No. 63084, unreported, 1993 WL 135787. The court of appeals declined to review appellants' assignment of error regarding the trial court's grant of partial summary judgment to appellees on the interpretation of the roadway reservation, finding that the remand for a new trial on damages on the counterclaims rendered that decision of the trial court an interlocutory, unappealable order.

**{¶ 13}** On remand, the trial court left undisturbed the earlier decision to grant partial summary judgment to appellees on the roadway issue. The case proceeded to a jury trial on appellees' counterclaims, with appellees dismissing their counterclaims against Atara Apel and proceeding on their trespass

counterclaim against appellant Zeev Apel. After the trial court denied appellant's motion for a directed verdict, the jury returned a compensatory damage award in favor of appellees for $500, and also found appellant liable for punitive damages and attorney fees. The trial judge later ruled that appellees were entitled to $500 in punitive damages and $14,298.78 in attorney fees.[1]

{¶ 14} Appellants appealed to the Court of Appeals for Cuyahoga County. Appellees filed a notice of cross-appeal, but later withdrew their cross-appeal. In their first assignment of error, appellants challenged the trial court's grant of partial summary judgment in favor of appellees on the interpretation of the roadway reservation pertaining to the easement over appellees' property. In four other assignments of error, appellant Zeev Apel raised issues regarding the jury's verdict against him on appellees' trespass counterclaim.

{¶ 15} The court of appeals found that the trial court erred in granting partial summary judgment in favor of appellees on the roadway issue, in that a genuine issue of material fact remained to be determined regarding the rights and burdens of the parties. The court of appeals declined to address the remaining assignments of error, relating to the trespass counterclaim, finding no need to address those assignments of error based on the disposition of the first assignment of error. The cause was remanded to the trial court for further proceedings.

---

1. The trial judge determined the amount of punitive damages pursuant to former R.C. 2315.21(C)(2). In *Zoppo v. Homestead Ins. Co*. (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph two of the syllabus, this court found that R.C. 2315.21(C)(2) violated the right to trial by jury set forth in Section 5, Article I of the Ohio Constitution, and held that, in a case tried to a jury, the jury rather than the judge is the proper assessor of the amount of punitive damages. That the trial judge set the amount of punitive damages is not an issue pertinent to this appeal.

Once punitive damages were found to be appropriate by the jury, the jury then also determined that attorney fees were appropriate as well. Attorney fees are potentially recoverable as a part of compensatory damages when punitive damages have been awarded. See *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658; *Zoppo,* 71 Ohio St.3d at 558, 644 N.E.2d at 402.

**{¶ 16}** Both appellants and appellees filed motions for reconsideration in the court of appeals. Both contended that the court of appeals had erred in determining that the assignments of error relating to the trespass counterclaim were dependent on the trial court's resolution on remand of the roadway issue. The parties agreed that the trespass counterclaim was based on facts unrelated to the roadway dispute, and requested that the court reconsider its decision not to address the assignments of error regarding the trespass damages.

**{¶ 17}** In a journal entry issued after its opinion was announced, the court of appeals denied the motions for reconsideration, but clarified that, in remanding for further proceedings, it was not expressly ordering a trial on all issues, but was allowing the trial court on remand the discretion to determine what issues should be tried (or, presumably, retried), subject to appeal at the conclusion of all trial court proceedings.

**{¶ 18}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*J. Michael Goldberg*, for appellants.

*Hahn, Loeser & Parks, L.L.P., Michael J. Garvin* and *Andrew S. Pollis*, for appellees.

————————————

**ALICE ROBIE RESNICK, J.**

**{¶ 19}** This case first presents the issue of the correct interpretation to be given to the scope of the reservation of the right to keep and maintain a roadway over the easement on appellees' property. Second, the case raises various issues regarding the damage awards in appellees' favor on their trespass counterclaim against appellant Zeev Apel. For the reasons which follow, after a thorough review of the record, we determine that the trial court erred in ruling against appellants on their request for a declaratory judgment interpreting the scope of the easement

across appellees' property. We also determine that the damages awarded to appellees on their trespass counterclaim were properly assessed against appellant. We reverse the judgment of the court of appeals, enter final judgment for appellants on the roadway issue, and enter final judgment for appellees on the compensatory damages, punitive damages, and attorney fees awarded on the trespass counterclaim.

I

{¶ 20} In the initial ruling interpreting the scope of the reservation by Goodman in the deed to the Saporitos allowing Goodman to "keep and maintain a roadway" on the easement over the property now owned by appellees, the trial court granted appellees' motion for partial summary judgment. Since appellees had argued that the roadway provision was merely a personal reservation by Goodman, it seems logical to assume that the trial court must have accepted that argument in ruling the way that it did, and must have rejected appellants' argument that the roadway easement was an express easement that runs with the land for appellants' benefit. However, we share the concerns expressed by the court of appeals in this case that the trial court, in issuing what amounted to a declaratory judgment on the scope of the easement, should have included a determination of the rights of the parties involved. The failure of the trial court to issue an explanation of the consequences of its ruling was the first in a series of misunderstandings and missteps involving this case that have compounded as the case has progressed to place it in the confusing posture we now encounter.

{¶ 21} The complaint in this case was filed in 1989. Thus far, this case has gone through the trial court two times, and has also gone through the court of appeals two times, and it seems that the case is no closer to resolution now than it was prior to the issuance of any rulings by the trial court in its early stages. In the opinion now being appealed from, the court of appeals has ordered yet another remand to the trial court, apparently for the trial court to readdress the scope of the

roadway easement—the key question raised in appellants' request for a declaratory judgment almost ten years ago. There still has been no appellate review of the ultimate propriety of the trial court's determination on this question, a question of law that in our view was ripe for decision at the time the trial court rendered its initial judgment on June 11, 1991.

{¶ 22} Our review of the record convinces us that this issue is capable of resolution from an examination of the materials before us. We disagree with the determination reached by the court of appeals that "a genuine issue of material fact remains pending for litigation relative to whether the grantor intended to reserve for herself an express easement with the right to maintain a roadway." We see no reason to remand this cause to the trial court, and therefore we reverse the judgment of the court of appeals ordering that result. We proceed to an examination of the terms of the roadway provision of the reservation, to review what we understand to be the trial court's construction of its scope.

{¶ 23} In arguing for what they each contend is the proper interpretation of this provision, the parties cite R.C. 5301.02, and dispute how that statute applies to the inquiry. R.C. 5301.02 provides that "[t]he use of terms of inheritance or succession are [*sic*] not necessary to create a fee simple estate, and every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less [*sic*] estate."

{¶ 24} In citing this statute, the parties dispute whether it even applies at all, with appellees arguing that the statute on its face applies only to grants, conveyances, and mortgages, not reservations, of interests. In the event that this statute is found to apply, the parties dispute how it affects the outcome. The parties also cite cases to support their interpretations.

**{¶ 25}** For purposes here, R.C. 5301.02 principally provides that the failure to include language of inheritance or succession, typically the phrase "heirs and assigns," is not automatically fatal to the creation of a fee estate. See, generally, *Ewing v. McClanahan* (1986), 33 Ohio App.3d 46, 48, 514 N.E.2d 444, 445, fn. 4; *DeShon v. Parker* (1974), 49 Ohio App.2d 366, 367, 3 O.O.3d 430, 431, 361 N.E.2d 457, 458. Beyond that limited proposition, we find that the statute and other cited authorities are of little help in clarifying the specifics of our inquiry. R.C. 5301.02 in essence goes on to direct a court to look to the wording of the provision at issue to determine its meaning. We see no need to rely on the statute or on the parties' specific references to case law to support our interpretation of the roadway provision, but instead look to the wording of the reservation itself to determine its scope.

**{¶ 26}** In this situation, the language employed, considered in light of the surrounding circumstances, is the best indication of what Goodman and the Saporitos intended when they agreed to the transfer of the front parcel in 1976. See *Gill v. Fletcher* (1906), 74 Ohio St. 295, 78 N.E. 433, paragraph one of the syllabus. While the authorities cited by the parties appear to consistently support this general approach in resolving disputes of this type, the specifics of such an inquiry depend upon the facts of each case. Thus, regardless of whether we apply R.C. 5301.02 or not, the analysis is the same.

**{¶ 27}** We disagree with appellees' contention, voiced throughout this litigation, that the roadway provision is a separate "clause" in the deed from Goodman to the Saporitos reserving the easement. We instead agree with appellants' contention that the roadway provision is a part of the same clause earlier reserving an easement for ingress and egress, and actually complements that earlier reservation. Appellees have not disputed that the easement for ingress and egress runs with the land. Furthermore, appellees have not contended that the easement is limited to foot access to the property, and the reservation's terms do not support

such an interpretation. Thus appellees must necessarily concede that access to vehicles is implied by the easement for ingress and egress. It seems clear that to make vehicle access practicable and meaningful, the right to keep and maintain a roadway was contemplated by Goodman and the Saporitos to be a part of the right of ingress and egress, rather than an independent reservation.

{¶ 28} This view is buttressed by the language contained in the deed transferring the rear parcel to appellants from Goodman, in which the reservation of the easement is also passed, and in which Goodman describes that easement as providing "ingress and egress to and from the above described property to Pike Drive, *the right to keep and maintain a roadway*," and utility access rights. (Emphasis added.) Obviously, Goodman felt that she had reserved as an appurtenant easement running with the land the right to keep and maintain the roadway, and also felt that she could transfer that roadway right to appellants.

{¶ 29} Appellees' position throughout this litigation implies that Goodman, in the deed transferring the rear parcel to appellants, must have been mistaken in her belief that the roadway easement could be transferred to appellants. However, it seems to us to be more likely that it is appellees who are mistaken about the construction of the roadway provision, and about the intent of Goodman and the Saporitos evidenced in the 1976 deed for the sale of the front parcel.

{¶ 30} In conclusion, we find that no ambiguity is present in the provision at issue, and we resort to no specific rules of construction to resolve the easement's scope. The trial court erred in granting partial summary judgment for appellees on this question, and instead should have granted summary judgment for appellants, and should have declared that appellants' easement rights over appellees' property include the right to keep and maintain a roadway in order to facilitate "ingress and egress to and from the property" of appellants. The contours of the roadway right over the thirty-foot-wide easement are defined by what is reasonable under the circumstances present here.

II

**{¶ 31}** The court of appeals below appears to have decided that it was unclear whether the issues raised in appellant Zeev Apel's assignments of error regarding trespass damages were interrelated with the roadway issue remanded to the trial court, and so declined to address those remaining assignments of error. The parties to this appeal agree that the trespass issues are unrelated to the roadway issue, and contend that the court of appeals erred in not addressing them. The parties suggest that we order a remand on those questions to the court of appeals, accompanied by a directive from this court ordering the court of appeals to address those issues.

**{¶ 32}** To that end, the parties cite App.R. 12(A)(1), and argue that the court of appeals had a mandatory duty to review and rule on the remaining assignments of error. App.R. 12(A)(1) provides:

"On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

" * * *

"(c) Unless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

**{¶ 33}** After a thorough review of the record, we agree with the parties' position that the trespass issues raised in the court of appeals were unrelated to the roadway issue raised there, and should have been addressed by the court of appeals. Furthermore, we have already determined that the court of appeals should not have ordered a remand to the trial court on the roadway issue. However, rather than remanding this cause to the court of appeals with orders to address those assignments of error, we choose to decide the issues, based on the briefing of those issues by the parties both here and in the court of appeals.

**{¶ 34}** The remaining assignments of error raised in the court of appeals by appellant Zeev Apel are:

"II. The trial court erred in failing to sustain Zeev Apel's motion for directed verdict; and, the jury's verdict was against the manifest weight of the evidence.

"III. The trial court erred as a matter of law in failing to instruct the jury properly on the issue of restoration damages.

"IV. The trial court erred as a matter of law in failing to sustain Zeev Apel's motion to dismiss the Katzes' punitive damages claim.

"V. The trial court erred as a matter of law in permitting the jury to consider the issue of punitive damages."

**{¶ 35}** In his second assignment of error, appellant argues that no compensatory damages for trespass should have been awarded in this case. Appellant argues both that the elements of trespass were not proven, so that the trial court should have sustained his motion for a directed verdict, and further that the jury's verdict was unfounded.

**{¶ 36}** Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

**{¶ 37}** A motion for a directed verdict must be denied if substantial competent evidence supports the position of the party opposing the motion, so that reasonable minds might reach different conclusions based upon the evidence. See *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284-285, 21 O.O.3d 177,

179, 423 N.E.2d 467, 469. Appellant argues that appellees did not raise a *prima facie* case of trespass against him.

{¶ 38} "A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631, 633. See, also, *Chance v. BP Chemicals, Inc*. (1996), 77 Ohio St.3d 17, 24, 670 N.E.2d 985, 991. Based on our review of the record, we find that appellees raised a *prima facie* case of trespass sufficient to get the issue to the jury, so that appellant's directed verdict motion was properly denied by the trial court. Appellees presented evidence regarding appellant's use of the portion of the gravel pathway located off the easement. The trial court did not err in allowing the matter to go to the jury.

{¶ 39} Further, for the same reasons, we find on the record here that substantial competent evidence was presented to support the jury's verdict, and we defer to the jury's determination that a trespass occurred.

{¶ 40} In his third assignment of error, appellant takes issue with the trial court's instruction to the jury on the proper measure of damages. Appellant argues that the trial court erred by not instructing that appellees' damage award was limited to the diminution in fair market value of the property caused by appellant's conduct. We find that appellant's view of the measure of damages is unduly restrictive as applied to the facts of this case, and does not recognize that some flexibility is permissible in the ascertainment of damages suffered in the appropriate situation. See, *e.g*., *Thatcher v. Lane Constr. Co.* (1970), 21 Ohio App.2d 41, 48-49, 50 O.O.2d 95, 99, 254 N.E.2d 703, 708 ("The general rule that the measure of damages for injury to real estate shall not exceed the difference in the market value of the entire tract immediately before and immediately after the injury is not an * * * exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result

of the wrongdoer's conduct."). Furthermore, in the circumstances of this case, we find that the failure of appellees to put on evidence regarding the fair market value of their property before and after the trespass conduct occurred is not fatal to appellees' claim for damages.

{¶ 41} In appellant's fourth and fifth assignments of error, he challenges the propriety of punitive damages in this situation. Appellant first argues that appellees' counterclaim was based on an ordinary trespass, and that the trial court should have dismissed the punitive damages component of the counterclaim as insufficient as a matter of law. In support of this position, in his fourth assignment of error, appellant argues that appellees failed to specifically plead malice or insult in their counterclaim, and also argues that appellees pled no facts to warrant punitive damages. After a review of the record, we determine that appellees in their pleadings adequately put forth their punitive damages claim to put appellant on notice of the substance of the claim, and to avoid a dismissal of that claim by the trial court.

{¶ 42} Appellant, in his fifth assignment of error, next argues that the trial court should not have allowed the jury to consider whether appellees were entitled to punitive damages because the facts of this case do not, as a matter of law, support a punitive damages award. The punitive damages in this case were awarded pursuant to former R.C. 2315.21. The parties, not challenging the validity of that statute in the course of these proceedings, frame their arguments around whether the requirements of former R.C. 2315.21 are met in the circumstances of this case. The parties' arguments focus on the following provisions of former R.C. 2315.21:

"(B) * * * [P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult * * *;

"(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.

"(C) * * *

" * * *

"(3) In a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that he is entitled to recover punitive or exemplary damages." Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1690-1691.

{¶ 43} Because appellant was opposing the punitive damages sought in appellees' counterclaim, he is the "defendant" for purposes of this statute, and appellees are the "plaintiffs."

{¶ 44} Appellant, citing *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704, argues that there must be a nexus between the underlying tortious action and the related punitive damages claim. Further, citing former R.C. 2315.21(B), appellant argues that punitive damages must flow directly from the tortious "actions or omissions" of the defendant. Appellant contends that the required nexus is not present here, because the compensatory damages were based on his alleged trespassing onto appellees' land (and the resulting damage to appellees' property), while the punitive damages were based on verbal insults, or malicious behavior unrelated to that entry and damage.

{¶ 45} Appellees cite *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph one of the syllabus, for the proposition that punitive damages may be awarded for acts different from those directly causing compensatory damages, so long as the punitive damages flow from a course of conduct related to the compensatory damages. Appellant points out that this court in *Moskovitz* was not applying former R.C. 2315.21(B), because the cause of action in that case predated the effective date of the statute. However, even though appellant may be correct in this regard, we find that *Moskovitz* is relevant to our

consideration, because the argument of appellees based on *Moskovitz* is not inconsistent with the terms of former R.C. 2315.21(B). We accept appellees' position that the relationship between the tortious conduct and the punitive damages is not so remote in the circumstances of this case to make punitive damages unavailable under former R.C. 2315.21, and so disagree with appellant's position that the required nexus is missing.

{¶ 46} Finally, appellant's remaining contentions can be summarized as arguing in essence that appellees did not prove either "malice" or "insult" under former R.C. 2315.21(B)(1) by the clear-and-convincing-evidence standard of former R.C. 2315.21(C)(3). See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. Appellant argues that, at the most, his conduct leading to the punitive damages award was merely negligent, so that punitive damages should not have been awarded in this case.

{¶ 47} We acknowledge that this case does not present a classic punitive damages situation, as opposed to the situations in cases such as *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397 (punitive damages award based on allegation of bad faith refusal to settle claim against insurer), and *Moskovitz* (punitive damages award based on claim that defendant doctor in medical malpractice action altered patient records), which involved allegations of more egregious conduct. We also recognize that the level of wrongfulness in appellant's acts is somewhat open to question based on the differing interpretations the parties here place on their respective representations of the facts. However, after a comprehensive review of the record, we conclude that the trial court was justified in allowing the question of punitive damages to go to the jury, precisely because the facts are open to interpretation. Having concluded that the trial court did not err in submitting the punitive damages question to the jury, we defer to the jury's finding that punitive damages were appropriate.

**{¶ 48}** In conclusion, for all the foregoing reasons, the judgment of the court of appeals remanding this cause to the trial court is reversed. Furthermore, on the merits, we grant judgment in favor of appellants on their complaint in accordance with the rights declared in this opinion, and grant judgment in favor of appellees on their counterclaim.

*Judgment accordingly.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

————————————

**COOK, J., concurring in part and dissenting in part.**

**{¶ 49}** I respectfully dissent from the majority decision on the issue of punitive damages.

**{¶ 50}** Compensatory damages in this case were awarded to the Katzes because Mr. Apel damaged weeds, grass, and wildflowers by driving outside the easement benefiting his property. The punitive damage award, on the other hand, is not based on that activity. Instead, it is tied to verbal insults that stem from the roadway dispute.

**{¶ 51}** The applicable version of R.C. 2315.21(B) provided:

"[P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate;

"(2) The plaintiff in question has adduced proof of *actual damages that resulted from actions or omissions as described in division (B)(1) of this section.*" (Emphasis added.) Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1690-1691.

{¶ 52} Because it cannot be said that the tortious activity for which the Katzes recovered actual damages (*i.e.*, physical damage to vegetation resulting from Apel's driving off the easement) "resulted" from the acts or omissions demonstrating malice, fraud, oppression, or insult (*i.e.*, verbal insults uttered by Apel and directed at the Katz family), the Katzes failed to demonstrate that they were entitled to punitive damages under former R.C. 2315.21(B).

{¶ 53} The long-standing rule in Ohio is that "[e]xemplary or punitive damages may not be awarded in the absence of proof of actual damages." *Richard v. Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E.2d 109, syllabus. "The purpose of the *Richard* rule is to keep the punitive damages awarded a mere *incident* of the cause of action, rather than let it become a cause of action in and of itself. * * * No civil cause of action in this state may be maintained simply for punitive damages." (Emphasis *sic.*) *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 214, 485 N.E.2d 704, 705. Consistent with this rule, former R.C. 2315.21(B) required punitive damages to flow from the same tortious activity causing actual damages.

{¶ 54} The judicial policy preferences announced in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, cannot trump the unambiguous expression of the General Assembly in former R.C. 2315.21(B). In *Moskovitz*, the *court* declined to "establish a rule requiring that malicious conduct giving rise to a claim for punitive damages must independently cause compensable harm before punitive damages may be awarded." *Id.* at 651, 635 N.E.2d at 343. As noted by the majority, *Moskovitz* did not apply former R.C. 2315.21(B) because the cause of action predated the effective date of that statute. But we are now squarely faced with conflicting legislative (former R.C. 2315.21[B]) and judicial (*Moskovitz*) views on a nonconsitutional issue, and the General Assembly's view must prevail.

**{¶ 55}** The majority justifies its application of *Moskovitz* by reasoning that "*Moskovitz* is not inconsistent with the terms of former R.C. 2315.21(B)." Because I do not read the first paragraph of the syllabus of *Moskovitz* and former R.C. 2315.21(B) as being amenable to the majority's reconciliation, I dissent. A directed verdict was warranted on the punitive damages issue, and the Katzes are not entitled to a punitive damages award or attorney fees.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

————————————