[Cite as *Love v. Hamilton Cty. Job. & Family Servs.*, 2025-Ohio-2498.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KEITH LOVE, | : | APPEAL NO. C-240468 |
| | | TRIAL NO. A-2401554 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| HAMILTON COUNTY JOB & FAMILY SERVICES, | : | *JUDGMENT ENTRY* |
| | : | |
| KENYATTA MITCHELL, | : | |
| DANEYA SMITH, | : | |
| and | : | |
| EVAN HANDEL, | : | |
| Defendants-Appellees. | : | |
| | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed as modified.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 7/16/2025 per order of the court.**

**By:**_____
         **Administrative Judge**

[Cite as *Love v. Hamilton Cty. Job. & Family Servs.*, 2025-Ohio-2498.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

KEITH LOVE,

    Plaintiff-Appellant,

    vs.

HAMILTON COUNTY JOB & FAMILY SERVICES,

KENYATTA MITCHELL,

DANEYA SMITH,

    and

EVAN HANDEL,

    Defendants-Appellees.

:    APPEAL NO.    C-240468
    TRIAL NO.    A-2401554

*O P I N I O N*

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed as Modified

Date of Judgment Entry on Appeal: July 16, 2025

*Keith Love*, pro se,

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Dmitriy Bikmayev* and *James Sayre,* Assistant Prosecuting Attorneys, for Defendants-Appellees.

CROUSE, Judge.

{¶1} Plaintiff-appellant Keith Love sued defendant-appellee the Hamilton County Department of Job and Family Services[1] ("HCJFS") along with three caseworkers, for allegedly mishandling their investigation of an allegation of child neglect lodged against him. The trial court dismissed all of Love's claims with prejudice.

{¶2} Upon review, we conclude that the trial court was correct in holding that Love failed to state a claim against the caseworkers. We also agree with the trial court's conclusion that it never obtained personal jurisdiction over HCJFS, because HCJFS lacks the capacity to be sued. However, because a personal-jurisdiction dismissal is "otherwise than on the merits," *see* Civ.R. 41(B)(4), we hold that the trial court should have dismissed Love's claims against HCJFS *without* prejudice, and we modify the judgment to clarify as much. So modified, we affirm.

## I. BACKGROUND

{¶3} According to his complaint, Love's problems began when he applied to a position to work with children at "Legacy Residential Homes" in February 2023. Love's application for employment was rejected, he says, because a background check revealed that he "ha[d] an open case with Hamilton County." Love alleges that he was unaware of any case against him and "immediately call[ed] HCJFS 241 kids and got a hold of [defendant-appellee] Kenyatta Mitchell," his "case worker."

{¶4} Mitchell informed Love that HCJFS had opened a child-neglect investigation against him in July 2022, after it had received allegations that one of

---

[1] Love named "Hamilton County Job and Family Services," rather than "Hamilton County Department of Job and Family Services," in his complaint, notice of appeal, and brief. We have used the name that appeared in the notice of appeal in our caption, but HCJFS's full name in the body of our opinion.

Love's sons had engaged in sexual touching of Love's seven-year-old daughter while the two children were in Love's care. Love denied the allegations. Mitchell arrived two days later and spoke with the male children then present in the home, including the son alleged to have engaged in the sexual touching. Love's daughter resided with her mother and was not present for Mitchell's visit. Love alleges that he and the mother were fighting over custody of their daughter in court.

{¶5} According to Love, Mitchell returned a week and a half later and told him that she had spoken with Love's daughter and her mother. Mitchell relayed how Love's daughter had alleged that Love's son had inappropriately touched her "over ten times." Love again denied these allegations and asserted that the mother had fabricated the allegations to help her win the custody battle. But Mitchell, Love alleges, acted "patronizing" and "carried on this attitude of not really trying to listen or believe what [Love was] saying about the situation." Love called Mitchell's supervisor while she was present, but the supervisor was similarly dismissive. Mitchell then suggested having "HCDDS" make a visit to Love's home.[2] Feeling pressured, Love acquiesced. "HCDDS" never contacted Love, however, and Love had to reach out to them to schedule a meeting.

{¶6} Two weeks later, another caseworker, defendant-appellee Daneya Smith, visited Love's home to speak with Love and two of his three sons, including the son accused of having engaged in the inappropriate touching. In his complaint, Love alleges that Smith spent the bulk of her visit typing on her phone, but that Love could not tell whether she was using the device to take notes or ignoring him. Smith recommended what Love understood to be a counseling program, and Love agreed,

---

[2] "HCDDS" is only identified by this initialism in the complaint.

saying that he was willing to do "anything that's going to clear this up." Smith then left to speak with the children's mother.

{¶7} In April 2023, Love received a case-disposition letter informing him that HCJFS had found the neglect charge pertaining to his daughter to be "substantiated." Love appealed this determination, but a hearing officer ultimately upheld HCJFS's finding, based primarily on the credibility of the daughter's testimony at the hearing. Love alleges that Mitchell, who was present for and testified at the hearing, had "changed some important things and never investigated the very claims that she put on [him]." Love's complaint does not explain what he means by this, only that Love "investigated [him]self," and "found the truth."

{¶8} According to Love, his custody dispute over his daughter was ultimately terminated or dismissed. It is not clear from the complaint whether Love currently has custody of his daughter.

{¶9} Smith was involved throughout Love's ongoing custody dispute, sometimes appearing at the custody hearings. Even after the custody proceedings had ended, Love alleges, he received and ignored repeated text messages from Smith seeking to set up times for home visits. Love further alleges that Smith began to "stake out [his] home" in a dark gray Honda Accord, which Love saw outside his home on several occasions between January 9 and February 1, 2024.[3]

{¶10} In April 2024, Love filed his complaint, bringing claims "against, HCJFS : Kenyatta Mitchell for Gross Negligence 14th amendment right, Daneya Smith for Harassment and Evan Handel for Neglect misrepresentation." He sought an order "to have [his] name removed from th[eir] registry," as well as damages for "pain and

---

[3] The complaint lists "January 9, 2023," and "February 1, 2023," but context suggests that these are typographical errors.

suffering 30,000, one year salary 35,360 and my filing fee returned 595.00."

**{¶11}** The defendants moved to dismiss Love's complaint for lack of personal jurisdiction over HCJFS, under Civ.R. 12(B)(2), and for failing to state a claim against any of the defendants, under Civ.R. 12(B)(6). The trial court found that (1) it "lack[ed] personal jurisdiction over HCJFS" because "HCJFS is not *sui juris* and is incapable of being sued under Ohio law," (2) the individual defendants were "statutorily immune" from any state-law tort claims under R.C. 2744.03, (3) Love had failed to allege any violation of his constitutional rights, and, (4) to the extent Love *had* alleged a violation of a constitutional right, the individual defendants would be entitled to qualified immunity. The court granted the Civ.R. 12(B)(6) motion with respect to all claims against all parties and dismissed them "with prejudice."

**{¶12}** Love then filed the instant appeal.

## II. ANALYSIS

**{¶13}** Love raises three assignments of error, all challenging the trial court's dismissal of his claims with prejudice pursuant to Civ.R. 12(B)(6), which we review de novo. *See Schmitz v. NCAA*, 2018-Ohio-4391, ¶ 10.

### A. Assignment of Error 1: HCJFS's Capacity to be Sued

**{¶14}** In his first assignment of error, Love argues that "[t]he trial court erred in finding HCJFS non-sui juris and dismissing claims against the agency, thus denying Mr. Love an opportunity to challenge HCJFS's alleged failure to meet statutory obligations." Although we agree with the trial court that HCJFS is not "sui juris" in that it lacks the capacity to be sued, we nevertheless conclude that the trial court erred by granting HCJFS's motion under Civ.R. 12(B)(6) and dismissing the claims against it *with prejudice*, rather than granting its motion under Civ.R. 12(B)(2) and dismissing

7

them *without prejudice.*

### 1. Capacity to be Sued

{¶15} "It is well established that both plaintiff and defendant in a lawsuit must be legal entities with the capacity to be sued." *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 574 (1992).

{¶16} The law uses the Latin phrase "sui juris," which translates literally to "of its own right/power," to connote an entity "[o]f full age and capacity" or "[p]ossessing full social and civil rights." *Black's Law Dictionary* (8th Ed. 2004). In this context, an entity sui juris is one "possessing full capacity and rights to sue or be sued." (Cleaned up.) *Krouskoupf v. Muskingum Cty. Common Pleas Court*, 2025-Ohio-585, ¶ 11. HCJFS contends that because it is not "sui juris," i.e., because it lacks capacity to be sued, it cannot be haled into court as a defendant.

{¶17} HCJFS is correct; Ohio law has not given it the ability to be sued. County departments of job and family services are created by state law. *See* R.C. 329.01. And Ohio law dictates the powers and duties of these departments. *See* R.C. 329.04. When, as is the case in Hamilton County, a county department of job and family services acts as the county's "public children services agency," another set of statutory provisions provide further powers and duties. *See*, *e.g.*, R.C. 5153.02(B) (specifying that a "county department of job and family services" may "be the public children services agency" for a county); R.C. 5153.18 (describing powers and duties of a public children services agency); *see generally* R.C. Ch. 5153.

{¶18} While these statutes have given HCJFS the legal capacity to *sue*, they have not endowed it with the capacity to *be sued*. R.C. 5153.18(A) provides that a "public children services agency shall have the capacity possessed by natural persons *to institute proceedings* in any court" (emphasis added), but is conspicuously silent as

to whether the agency may appear on the other side of the "v."

{¶19} Love contends that R.C. 5153.16 and 2744.02(B)(5) render HCJFS sui juris. But neither provision speaks in terms of HCJFS's capacity to defend a lawsuit. The former provision merely sets forth the duties of a county public children services agency, but nowhere speaks to such an agency's capacity to be sued.

{¶20} Nor does R.C. 2744.02(B)(5) render HCJFS sui juris. The Ohio Supreme Court has already rejected the argument that Ohio's municipal-tort-liability statutes under R.C. Ch. 2744 permit suits against entities not otherwise sui juris. *Estate of Fleenor v. Ottawa Cty.*, 2022-Ohio-3581, ¶ 12. While those provisions create and govern "political-subdivision tort liability and immunity," they do not alter the fact that an "unchartered county" and its various departments are merely "arm[s] of the State without the capacity of being sued as . . . separate entit[ies]," unless Ohio law expressly provides to the contrary. *Id.*

{¶21} This conspicuous absence of any language empowering the agency to be sued contrasts sharply with other provisions that unambiguously empower departments or agencies to be both plaintiffs and defendants. *See, e.g.*, R.C. 305.12 (permitting boards of county commissioners to "sue and be sued, and plead and be impleaded, in any court"); R.C. 353.02 (a county lake facilities authority is "a body corporate and politic which may sue and be sued, plead and be impleaded"); R.C. 1545.07 (board of park commissioners "shall be a body politic and corporate, and may sue and be sued as provided in [R.C. 1545.01-.28]"); R.C. 5595.04(B) ("The governing board of a regional transportation improvement project may . . . [s]ue and be sued in its own name, plead and be impleaded . . . ."). When the General Assembly wishes to create a department or entity that is fully sui juris, it knows how to do so with unambiguous language.

**{¶22}** We have found no Ohio cases holding that a county department of job and family services or public children services agency has the capacity to be sued in its own name. The closest, *Maddox v. Bd. of Dirs. Children Servs. Bd.*, 2014-Ohio-2312, ¶ 12 (2d Dist.), permitted a suit against a county children services board of directors in its own name under Ohio's Open Meetings Act. But in that case, the Second District expressly disclaimed the question of whether the board's organic statute rendered it sui juris. *Id.* at ¶ 10. Rather, the *Maddox* court held that the board was a "public body" under Ohio's Open Meetings Act, rendered amenable to suits seeking "injunctive relief, civil forfeitures, court costs, and attorney fees" for violations of that particular statute. *Id.* at ¶ 12.

**{¶23}** Numerous federal district courts have held that departments of job and family services in Ohio—and HCJFS in particular—lack the capacity to be sued in their own name. *See, e.g., Wilson v. Trumbull Cty. Dept. of Job & Family Servs.*, 2013 U.S. Dist. LEXIS 154925, *8-9 (N.D. Ohio Oct. 7, 2013) (magistrate's recommendation), adopted 2013 U.S. Dist. LEXIS 154926 (N.D. Ohio Oct. 29, 2013); *Lowe v. Hamilton Cty. Dept. of Job & Family Servs.*, 2008 U.S. Dist. LEXIS 125138, *5-6 (S.D. Ohio Feb. 29, 2008) (magistrate's recommendation), adopted 2008 U.S. Dist. LEXIS 24029 (S.D. Ohio Mar. 26, 2008); *Linkous v. Hamilton Cty. Job & Family Servs.*, 2016 U.S. Dist. LEXIS 14421, *4 (S.D. Ohio Jan. 4, 2016) (magistrate's recommendation), adopted 2016 U.S. Dist. LEXIS 14235 (S.D. Ohio Feb. 5, 2016).

**{¶24}** We therefore hold that Ohio law has not given HCJFS the ability to be sued in its own name, and that HCJFS therefore could not be made a defendant.[4]

---

[4] This is not to say that plaintiffs may not seek recompense for tortious or unlawful conduct by HCJFS. Under Ohio law, all "powers and duties of a county department of job and family services are, and shall be exercised and performed, *under the control and direction of the board of county commissioners.*" (Emphasis added.) R.C. 329.04(B). Unlike HCJFS, the board of commissioners may "sue *and be sued,* and plead *and be impleaded*, in any court." (Emphasis added.) R.C. 305.12.

### 2. *Dismissal with Prejudice under Civ.R. 12(B)(6)*

**{¶25}** Although the trial court correctly concluded that HCJFS lacked the capacity to be sued, it erred in dismissing Love's claims against it with prejudice.

**{¶26}** HCJFS moved to dismiss this case under Civ.R. 12(B)(2), for "[l]ack of jurisdiction over the person." But the trial court dismissed the case against HCJFS under Civ.R. 12(B)(6), for "[f]ailure to state a claim upon which relief can be granted."

**{¶27}** The reason for dismissing a case—and therefore the vehicle used to dismiss it—have tangible consequences for the parties. The Ohio Rules of Civil Procedure provide that a dismissal for "[l]ack of jurisdiction over the person or the subject matter" is a dismissal "otherwise than on the merits," Civ.R. 41(B)(4), while a dismissal for failure to state a claim "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." Civ.R. 41(B)(3). In other words, a jurisdictional dismissal under Civ.R. 12(B)(2) *must be without prejudice*, while a dismissal based on a failure to state a claim under Civ.R. 12(B)(6) *may be with prejudice.*

**{¶28}** For an action to "commence[]" under Civ.R. 3(A), the trial court needs to obtain jurisdiction over the defendant—usually by service of process. But an individual or organization that lacks capacity to be sued cannot be a proper party defendant. Thus, lack of capacity prevents an action from "commenc[ing]" precisely because there is no proper defendant over whom the trial court may exercise jurisdiction, absent waiver. *See Patterson*, 63 Ohio St.3d at 576. If a proper defendant was never served, then "no case ever matured . . . to the point where the court had any jurisdiction over the defendant." *Kossuth v. Bear*, 161 Ohio St. 378, 383 (1954). Lack of capacity means lack of personal jurisdiction.

**{¶29}** Because a dismissal for lack of capacity is a "dismissal for . . . [l]ack of

jurisdiction over the person," it "operate[s] as a failure otherwise than on the merits." *See* Civ.R. 41(B)(4)(a). A dismissal for lack of capacity is a dismissal *without prejudice*.

\* \* \*

**{¶30}** Accordingly, the trial court should have dismissed Love's claim against HCJFS without prejudice, pursuant to HCJFS's motion under Civ.R. 12(B)(2). We therefore sustain Love's first assignment of error in part and overrule it in part.[5]

### B. Assignments of Error 2 & 3:
### Failure to State a Claim against Individual Defendants

**{¶31}** Love's remaining two assignments of error concern the trial court's dismissal of his claims against three individual defendants: Evan Handel, Daneya Smith, and Kenyatta Mitchell.

**{¶32}** In his second assignment of error, Love contends that "[t]he trial court erred in granting immunity to Defendants Mitchell, Smith, and Handel under [R.C.] 2744.03(A)(6), despite allegations of reckless and malicious conduct that would negate such immunity."

**{¶33}** In his third assignment of error, Love argues that "[t]he trial court erred by failing to address Mr. Love's substantive due process claims, violating his right to a fair and impartial investigation by HCJFS."

**{¶34}** In other words, Love contends that the trial court should not have granted the individual defendants' motion to dismiss his state-law tort claims and federal due-process claim, because his complaint sufficiently stated his entitlement to relief from those defendants. We address these assignments of error together.

---

[5] Although they are not a model of clarity, some of Love's other assignments of error could be read to contend that the trial court erred in dismissing Love's claims against HCJFS for failing to state a substantive claim upon which relief could be granted. To the extent Love's other assignments of error raise such issues, our decision as to this first assignment of error renders them moot, and so we do not address them.

**{¶35}** Ohio's Civ.R. 12(B)(6) is procedural in character, intended to test the sufficiency of a complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992); *accord Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 8. Civ.R. 8(A) governs any pleading that sets forth a claim for relief and requires that such pleadings "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."

**{¶36}** Ohio courts have construed these provisions to impose a "notice pleading" regime. *See Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 2021-Ohio-4096, ¶ 10. "The purpose of notice pleading is clear: to simplify pleadings to a short and plain statement of the claim and to simplify statements of the relief demanded, to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." (Cleaned up.) *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13. Because notice is the goal, Ohio courts do not require a plaintiff "to prove his or her case at the pleading stage," and will not dismiss a complaint "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991); *accord Doe* at ¶ 7-8.

**{¶37}** A plaintiff is generally not required to plead around possible affirmative defenses—in part because those defenses generally do not become part of the case until raised in the answer. *See* Civ.R. 12(B) ("Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required . . . ."); Civ.R. 8(C) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense."). But where the plaintiff's "complaint shows conclusively on its face that"

13

some statutory defense would bar an asserted claim, the defendant may seek dismissal under Civ.R. 12(B)(6). *Schmitz*, 2018-Ohio-4391, at ¶ 11.

{**¶38**} It is well-settled that a plaintiff "is not required to affirmatively dispose of the immunity question at the pleading stage." *Plush v. City of Cincinnati*, 2020-Ohio-6713, ¶ 14 (1st Dist.). And yet R.C. 2744.03(A)(6) grants political-subdivision employees presumptive immunity from liability for harm "caused by any act or omission in connection with a governmental or proprietary function," R.C. 2744.03(A), unless within one of three exceptions.

{**¶39**} To resolve this ambiguity, we focus on what the complaint tells us. We first determine whether the allegations in the complaint add up to a cause of action against the defendant. If the answer is no, we need not reach the question of immunity.

{**¶40**} If the allegations in the complaint arguably allege a cause of action, we next ask whether the allegations trigger presumptive immunity by alleging that (1) the defendant is a political subdivision employee and (2) the plaintiff's harm was caused by an act or omission connected to a governmental or proprietary function. *See* R.C. 2744.03(A). If so, we then ask whether, drawing all inferences in favor of the plaintiff, the complaint is consistent with some set of facts that would justify one of the three exceptions in R.C. 2744.03(A)(6). *See, e.g.*, *Plush* at ¶ 47 (affirming denial of motion to dismiss where the court could not "say that the complaint 'obviously or conclusively' established that the officers were merely negligent and thus immune from liability").

{**¶41**} Because the relevant allegations against the three defendants differ from defendant to defendant, we address each in turn.

### 1. Evan Handel

{**¶42**} We begin with the simplest: Love's claim against Evan Handel for "Neglect misrepresentation." Love's complaint contained no allegations regarding

Handel's actions, role, or relationship to the case. Love's complaint failed to allege that Handel did *anything*, let alone anything that would render him liable in damages. We therefore hold that the trial court properly dismissed any claims Love brought against Handel.

### 2. *Daneya Smith*

**{¶43}** Love sought relief against Daneya Smith for "harassment." Love has cited no authority for a standalone tort of "harassment" under Ohio law, nor have we found any. The "harassment" alleged in Love's complaint consisted of Smith (1) coming to Love's home and seeking to make visits after Love had indicated his disinterest in such visits and (2) observing Love surreptitiously from a vehicle parked outside Love's home on an undisclosed number of instances over the span of about a month.

**{¶44}** The torts that most nearly fit such allegations would be intentional infliction of emotional distress ("IIED") and trespass. However, the facts alleged in the complaint hardly rise to the level of the sort of extreme or outrageous conduct that would give rise to an IIED claim. *See Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am,* 6 Ohio St.3d 369, 375 (1983), quoting 1 Restatement of the Law 2d, Torts, § 46, Comment d (1965) (IIED requires conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'"). And Love's allegations do not suggest that Smith entered onto his land except to approach his door and enter his home when invited. *See Apel v. Katz*, 1998-Ohio-420, ¶ 38, quoting *Linley v. DeMoss*, 83 Ohio App.3d 594, 598 (10th Dist. 1992) ("'trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another'").

**{¶45}** Because Love has cited no authority to show that the common law recognizes a tort of "harassment," and because he has argued no other cause of action supported by the allegations in his complaint, we hold that the trial court did not err in dismissing Love's claims against Smith, regardless of any immunity.

### 3. *Kenyatta Mitchell*

**{¶46}** Love also sought relief from caseworker Kenyatta Mitchell for "Gross Negligence" and for violations of the Fourteenth Amendment. The former is governed by Ohio law, the latter by federal law.

#### a. "Gross Negligence"

**{¶47}** To prevail in an action for negligence, the plaintiff must show (1) that the defendant was under a duty to act or not act in a particular manner, (2) that the defendant breached that duty, and (3) that the breach proximately caused the plaintiff's injury. *See Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10; *Baier v. Cleveland Ry. Co.*, 132 Ohio St. 388, 391 (1937).

**{¶48}** Love's complaint is not entirely clear as to which of Mitchell's actions he claims were the cause of his injury. Love's brief, however, suggests that Mitchell owed Love a duty to properly investigate the claims against him. Love points to two sources for such a duty: *Brodie v. Summit Cty.*, 51 Ohio St.3d 112 (1990), and R.C. 5153.16(A)(1). Both concern the responsibility of HCJFS to investigate allegations of abuse and neglect.

**{¶49}** *First*, even assuming the tort-law duty and cause of action permitted in *Brodie* remain good law, they would not apply here. In recognizing the cause of action in *Brodie*, the Court emphasized that the statutory structure of R.C. 2151.421 created a right *in the allegedly abused or neglected child* to a certain degree of investigation by the agency. *See Brodie* at 119 ("the action required by the statute is not directed at

16

or designed to protect the public at large, but intended to protect a specific child who is reported as abused or neglected"). Thus, if Mitchell owed such a duty, she owed it *not* to Love, but to *his daughter*.

**{¶50}** *Second*, Love asks us to enforce the duty imposed under R.C. 5153.16(A)(1), which requires a public children services agency to "[m]ake an investigation concerning any child alleged to be an abused, neglected, or dependent child." Even assuming, without deciding, that this provision imposed a duty enforceable against Mitchell in tort, we hold that Mitchell was immune.

**{¶51}** As Love's own brief makes clear, Mitchell's investigation of Love pursuant to R.C. 5153.16(A)(1) was, on its face, an "act . . . in connection with a governmental or proprietary function," entitling Mitchell to the presumptive shield of immunity. *See* R.C. 2744.03(A). That shield can be retracted if (a) the acts or omissions were manifestly outside the scope of her employment, (b) Mitchell acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," or (c) the Revised Code expressly imposes civil liability for the actions. R.C. 2744.03(A)(6).

**{¶52}** Love does not allege that Mitchell's actions in the investigation were outside the scope of her employment, eliminating the first exception to immunity. *See* R.C. 2744.06(A)(6)(a). Further, even assuming that R.C. 5153.16(A)(1) imposed upon Mitchell a *duty*, no provision of R.C. 5153.16 expressly authorized a private action for damages for its breach. *See* R.C. 2744.03(A)(6)(c) ("Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, . . . or because the section uses the term 'shall' in a provision pertaining to an employee.").

**{¶53}** That leaves the second exception. Love alleged that Mitchell acted with "gross negligence," but never alleged that she acted "with malicious purpose, in bad

faith, or in a wanton or reckless manner," as required by the immunity statute. *See* R.C. 2744.03(A)(6)(b). Negligence (gross or otherwise) is something less than wantonness, maliciousness, or bad faith. *See Maternal Grandmother*, 2021-Ohio-4096, at ¶ 8, quoting *O'Toole v. Denihan*, 2008-Ohio-2574, paragraph three of the syllabus ("Wanton misconduct and reckless conduct thus involve 'something more than mere negligence.'").

**{¶54}** Nor do Love's factual allegations sufficiently describe Mitchell's investigation of Love as demonstrating a "'conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances'" or "'fail[ing] to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result,'" so that we will infer an allegation that Mitchell's investigation was conducted wantonly, or recklessly. *See Maternal Grandmother* at ¶ 8, quoting *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 33-34.

**{¶55}** The trial court therefore did not err by dismissing Love's claim seeking damages for Mitchell's "gross negligence."

### b. Federal Due-Process Claim

**{¶56}** Love's complaint also suggested that Mitchell violated his rights under the Fourteenth Amendment. The language in his brief makes clear that his claim sounds in due process. We may presume, therefore, that Love brings this claim under the cause of action created by 42 U.S.C. 1983, the usual vehicle for civil suits seeking damages to redress violations of federal constitutional rights.

**{¶57}** A civil claim for a due-process violation generally requires the plaintiff to establish three elements: (1) that the plaintiff had a constitutionally-protected interest in life, liberty, or property, (2) that they were deprived of that interest by state

18

action, and (3) that they lacked adequate procedures to cure the deprivation. *See Wedgewood Ltd. Partnership I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010). Further, the deprivation must have been the result of something more than negligence or a "mere lack of due care by a state official." *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986).

**{¶58}** *First*, the Ohio Supreme Court has recognized that Love has either a property or liberty interest in his reputation, to which the Due Process Clause applies. *See State ex rel. Kilburn v. Guard*, 5 Ohio St.3d 21, 23 (1983).

**{¶59}** *Second*, Love's interest was arguably impaired by state action. According to the complaint, the State or its agents listed and published information about the open investigation of Love to a database accessible by Love's prospective employer.

**{¶60}** However, nothing in the complaint suggests that state action *by Mitchell* deprived him of the interest. The complaint does not allege that Mitchell opened the investigation against Love. Nor does it allege that Mitchell effected the deprivation of Love's liberty interest by entering his name into the database, or that she prevented him from availing himself of adequate procedural protections or remedies. Love has therefore failed to allege that *Mitchell* deprived him of his liberty or property without due process of law.

**{¶61}** Love's citation to *Lee TT v. Dowling*, 87 N.Y.2d 699 (1996), does nothing to counter this fact. The question addressed in *Lee TT* concerned the adequacy of pre- and post-deprivation procedural safeguards required to publish an alleged child abuser's name in a database like the one at issue here. *Id.* at 710-713. But *Lee TT* arose in the context of petitions for expungement from a database, not in an action for damages against an individual employee. *See id.* at 702. It therefore considered only

whether the procedures provided had been adequate, not who could be liable for resultant injuries.

{¶62} Love cannot recover from Mitchell for deprivations of property or liberty in which Mitchell was not involved. We therefore hold that the trial court did not err by dismissing Love's due-process claim against Mitchell.

### c. Injunctive Relief

{¶63} Love's complaint also sought an injunction ordering Mitchell (or any other defendant) to "have [his] name removed from there [sic] registry." Regardless of whether Love believes state law or the Due Process Clause entitle him to such injunctive relief, we hold that his injunctive request must fail. Love's allegations do not support a viable cause of action against either Handel or Smith. And to merit an injunction against Mitchell, Love would need to point to something that he would like Mitchell to *do* (or *stop doing*) to get his name off the registry. But neither Love's complaint nor his brief suggests anything Mitchell could now do to remove Love from the database or alter the hearing officer's finding. Nor does Love argue that Mitchell possesses any inherent authority to order that Love's name be removed from the registry. Thus, even assuming that Love's continued presence on the registry violates the law, Love's complaint offered no basis for granting injunctive relief against Mitchell.

\* \* \*

{¶64} The trial court did not err in granting the motions of individual defendants Handel, Smith, and Mitchell to dismiss Love's claims against them under Civ.R. 12(B)(6). We therefore overrule Love's second and third assignments of error.

### III. CONCLUSION

{¶65} For the foregoing reasons, we sustain Love's first assignment of error

insofar as it challenged the trial court's dismissal of his claims with prejudice. We overrule his first assignment of error in all other respects, along with his second and third. Accordingly, we modify the trial court's judgment to reflect that Love's claims against HCJFS were dismissed for want of personal jurisdiction and therefore without prejudice. *See* Civ.R. 41(B)(4). So modified, we affirm the trial court's judgment.

Judgment accordingly.

**BOCK** and **MOORE, JJ.,** concur.